IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth Preservation Alliance,
Inc.,
:
:
                 Appellant
:
:
:
          v.
:
:
No. 335 C.D. 2019
SUBMITTED: March 26, 2020
:
Thomas DeSantis, Known Heir of John
F. DeSantis and Unknown Heirs of
John F. DeSantis
:
:
:


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ELLEN CEISLER, Judge (P)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                            FILED: May 6, 2020

Commonwealth Preservation Alliance, Inc. (Alliance) appeals from the February 6, 2019 Order of the Court of Common Pleas of Philadelphia County (Trial Court) denying its Petition for Appointment of a Conservator (Petition) pursuant to the Abandoned and Blighted Property Conservatorship Act, Act of November 26, 2008, P.L. 1672, No. 135, *as amended*, 68 P.S. §§ 1101-1111 (Act 135).[1] The issues before this Court are: (1) whether the Alliance, a nonprofit corporation organized for the purpose of remediating blight in and around the City of Philadelphia (City), qualifies as a party in interest under Act 135; and (2) whether a trial court can dismiss an Act 135 petition without a hearing if the petition itself fails to establish that the petitioner is a party in interest under Act 135. Because we conclude that the Trial

---

[1] By Order dated February 5, 2020, this Court precluded Appellees Philadelphia Gas Works, the City of Philadelphia Department of Licenses and Inspections, the City of Philadelphia Water Revenue Bureau, and the City of Philadelphia Department of Revenue from filing briefs due to their failure to comply with the Court's briefing schedule.

Court erred in dismissing the Alliance's Petition without a hearing, we affirm the Trial Court's Order in part, reverse it in part, and remand this matter to the Trial Court for further proceedings.

**Relevant Provisions of Act 135**

Under Section 4(a) of Act 135, "a petition for the appointment of a conservator to take possession and to undertake the rehabilitation of a building may be filed by *a party in interest* in a court in the county in which the building is located." 68 P.S. § 1104(a) (emphasis added). Section 3 of Act 135 defines "party in interest" as follows:

> A person or entity who has *a direct and immediate interest in a residential, commercial or industrial building*, including:
>
> (1) The owner.
>
> (2) A lienholder and other secured creditor of the owner.
>
> (3) *A resident or business owner within 2,000 feet of the building*.
>
> (4) *A nonprofit corporation*, including a redevelopment authority, which:
>
>> (i) except as set forth in subparagraph (ii), is located in the municipality where the building is located; and
>>
>> (ii) *for a building located in a city of the first class, is located in the city and has participated in a project within a five-mile radius of the location of the building*.
>
> (5) A municipality or school district in which the building is located.

68 P.S. § 1103 (emphasis added).

2

## Background

On January 11, 2019, the Alliance filed its Petition seeking the appointment of a conservator for blighted property located at 606 Wendover Street in the City (Property). The Respondents are the known and unknown heirs of John F. DeSantis (DeSantis Heirs), who presently own the Property.[2] John F. DeSantis, then-sole owner of the Property, died in 1990. Pet. ¶¶ 20-21. The Property was last occupied by Marie DeSantis, Mr. DeSantis's daughter, who died approximately one year before the filing of the Alliance's Petition. *Id.* ¶¶ 25-26.

The Alliance is a nonprofit corporation "organized to engage in blight removal activities under Act 135, to remove longstanding causes of blight in communities throughout Pennsylvania[,] and to serve as a court-appointed conservator under Act 135." *Id.* ¶ 2. The Alliance "has been actively engaged in blight remediation projects in [the City] for over two decades." *Id.* ¶ 3. The Alliance has a registered office address of 1515 Market Street, Suite 1200, in the City. *Id.* ¶ 22.

Mary Mancini resides at 604 Wendover Street in the City, directly adjacent to the Property. *Id.* ¶¶ 8-9. On July 26, 2018, Ms. Mancini contacted the Alliance via

---

[2] In their appellate brief, the DeSantis Heirs aver that they had no notice of the Alliance's filing of the Petition until after this appeal was filed. DeSantis Br. at 1-2. They claim that they first became aware of the Petition while they were involved in a separately filed quiet title action regarding the Property in the Trial Court. *Id.* at 2. According to the DeSantis Heirs, on December 26, 2019, the Trial Court entered an Order in the quiet title action granting a default judgment in their favor, voiding a fraudulent deed to the Property previously executed by Brian Kelly, and declaring the DeSantis Heirs the owners of the Property. *Id.* & App. 2. However, the DeSantis Heirs aver that they are presently litigating another quiet title action regarding the Property in the Trial Court that has not yet been resolved. DeSantis Br. at 2-3 & App. 3.

The Commonwealth of Pennsylvania Department of Revenue (Revenue Department) has also filed an appellate brief in this matter. However, in its brief, the Revenue Department states that it no longer has standing to participate in the appeal because "[t]he statutory lien for [the] inheritance tax [on the Property] was extinguish[ed] by the payment of the tax." Revenue Dep't Br. at 1-2.

3

its website, www.abandonedphiladelphia.com. *Id.* ¶ 10. On September 19, 2018, Ms. Mancini became a "Supporter Member" of the Alliance. *Id.* ¶ 11. The Alliance attached to its Petition a copy of Ms. Mancini's "Supporter Member Form," which states in relevant part:

> The undersigned's membership in [the Alliance] as a Supporter Member is *limited only to a proposed or pending Act 135 Court Action relating to the . . . Property . . . .*
>
> . . . .
>
> *The member status of a Supporter Member shall automatically terminate by* either (i) written notice from the Supporter Member to the [Alliance's] Board [of Directors (Board)]; [(]ii) written notice from the Board to the Supporter Member, whether or not for cause, in the sole discretion of the Board; or (iii) *entry of a final order or final resolution of the Act 135 Action for the . . . Property.*

Pet., Ex. 4, ¶¶ 2, 9.[3]

In its Petition, the Alliance averred that, through its supporting member, Ms. Mancini, the Alliance is located within 2,000 feet of the Property. Pet. ¶ 12. As such, the Alliance averred that it is a party in interest as a resident within 2,000 feet of the Property under Section 3 of Act 135. *Id.*

The Alliance also averred that "through its members, [it] has extensive experience with the remediation of blighted properties," including property located at 1910 North 18th Street in the City, "and [with] facilitating the financing of blight remediation projects," including property located at 1438 North Broad Street in the City. *Id.* ¶ 14. Both 1910 North 18th Street and 1438 North Broad Street are located within five miles of the Property. *Id.* ¶ 15. Thus, the Alliance averred that it is a

---

[3] Ms. Mancini completed the Supporter Member Form on September 19, 2018, four months before the Alliance filed its Petition. *See* Pet., Ex. 4, at 2.

party in interest under Act 135 as a nonprofit corporation that participated in remediation projects within five miles of the Property under Section 3 of Act 135. *Id.* ¶ 16.

On February 6, 2019, without conducting a hearing, the Trial Court entered an Order denying the Petition, concluding that the Alliance does not qualify as a party in interest under Section 3 of Act 135. In its subsequent Pa. R.A.P. 1925(a) Opinion, the Trial Court first determined that the Alliance is not a party in interest under subsection (3) of the party-in-interest definition, as it does not reside or own a business within 2,000 feet of the Property. The Trial Court explained its reasoning as follows:

> The Petition does not aver [that] the . . . Alliance is a resident or a business owner within 2,000 feet of the [P]roperty; to the contrary, the only factual averment is that [Ms.] Mancini resides next door to the [P]roperty. *[Ms.] Mancini is not a party to this action. Had [Ms.] Mancini filed the instant Petition, there is no question she would qualify as a "party in interest" under subsection 3.* Similarly, if the Petition averred [that] the . . . Alliance resided or was a business owner within 2,000 feet of the [P]roperty, then the . . . Alliance would undoubtedly qualify as a "party in interest" under subsection 3. *Since the . . . Alliance does not reside or operate a business within 2,000 feet of 606 Wendover Street, it does not qualify as a "party in interest" under subsection 3.*

Trial Ct. Op., 7/23/19, at 5 (emphasis added).

The Trial Court also rejected the Alliance's assertion that it qualified as a party in interest by way of its "Supporter Member" program. The Trial Court found, based on the averments in the Petition and the documents appended thereto, that "'Supporter Members' are non-voting members who have no financial interest in the . . . Alliance; they lack authority to bind the . . . Alliance, are not entitled to information concerning the corporate dealings of the . . . Alliance, and have no right

5

to use the . . . Alliance's name, logo, or intellectual property." *Id.* at 5-6. The Trial Court further found that "Supporter Members" are nothing more than "pawns, used by the . . . Alliance in an attempt to gain 'party in interest' status in a single conservatorship action[,] [who are] then discarded when they are no longer useful." *Id.* at 6.

Finally, the Trial Court concluded that the Alliance did not qualify as a party in interest as a nonprofit corporation because "the Petition d[id] not allege [that] the . . . Alliance participated in a project within five miles of the [P]roperty" as required by subsection (4)(ii) of the party-in-interest definition. *Id.* at 7. The Trial Court explained that the Alliance merely alleged that "*through its members*," it "has extensive experience" with remediation of blighted properties, including properties located at 1910 North 18th Street and 1438 North Broad Street in the City. *Id.* (quoting Petition). However, the Trial Court noted that the fact that the Alliance's *members* participated in nearby remediation projects was "wholly irrelevant" to the question of whether *the Alliance* participated in a project within five miles of the Property so as to establish party-in-interest status under subsection (4)(ii). *Id.* at 7-8.

Therefore, because the Petition failed to establish that the Alliance is a party in interest under Section 3 of Act 135, the Trial Court denied the Petition and lifted the *lis pendens* on the Property. Trial Ct. Order, 2/6/19, at 1. The Alliance now appeals to this Court.[4]

---

[4] Our review of a trial court's ruling on a petition for appointment of a conservator under Act 135 is limited to determining whether the trial court abused its discretion or committed an error of law necessary to the outcome of the case. *In re Conservatorship Proceeding in Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010).

**Analysis**

## 1. Subsection (3) of the Party-in-Interest Definition

First, the Alliance asserts that the Trial Court erred in concluding that it is not a party in interest under subsection (3) of the party-in-interest definition as "[a] resident or business owner within 2,000 feet of the building." 68 P.S. § 1103. The Alliance does not dispute that it does not reside or own a business within 2,000 feet of the Property. Rather, the Alliance posits that because its supporting member, Ms. Mancini, resides directly adjacent to the Property, the Alliance is a party in interest under the common law principle of derivative standing. We disagree.

In support of this assertion, the Alliance relies on several cases from this Court involving legal challenges to municipal zoning decisions. *See, e.g., Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd.*, 186 A.3d 525 (Pa. Cmwlth. 2018); *Soc'y Hill Civic Ass'n v. Phila. Bd. of License & Inspection Review*, 905 A.2d 579 (Pa. Cmwlth. 2006); *Pittsburgh Tr. for Cultural Res. v. Zoning Bd. of Adjustment*, 604 A.2d 298 (Pa. Cmwlth. 1992). In each of these cases, this Court held that a neighborhood organization had derivative standing, as an aggrieved party, to challenge a zoning decision because at least one member of the organization suffered immediate or threatened harm as a result of the decision. *See Friends of Lackawanna*, 186 A.3d at 533; *Soc'y Hill*, 905 A.2d at 586; *Pittsburgh Tr.*, 604 A.2d at 304.

Contrary to the Alliance's assertion, however, we need not resort to common law principles of derivative standing in this case because *the statute itself* delineates the persons and entities that are permitted to file an Act 135 petition. *See Pa. Nat'l Mut. Cas. Ins. Co. v. Dep't of Labor & Indus., Prevailing Wage Appeals Bd.*, 715 A.2d 1068, 1071 (Pa. 1998) (holding that standing can be statutorily conferred);

7

*Meguerian v. Office of Att'y Gen.*, 86 A.3d 924, 929 (Pa. Cmwlth. 2013) ("Generally, when statutory provisions designate who may appeal an agency action, only those persons so designated have standing to appeal.").

Here, the plain language of Section 4(a) of Act 135 states that only *a party in interest*, as defined in Section 3 of Act 135, may file a petition seeking appointment of a conservator. 68 P.S. § 1104(a). A party in interest must have "a *direct and immediate interest* in [the] residential . . . building" for which it is seeking a conservatorship. 68 P.S. § 1103 (emphasis added). The statute then identifies the various persons and entities that meet this definition, including the property's owner, lienholders, nearby residents or business owners, municipalities, school districts, and certain nonprofit corporations. *See id.*

Significantly, subsection (4) of the party-in-interest definition – defining the circumstances under which a nonprofit corporation qualifies as a party in interest – does not provide a nonprofit corporation with derivative standing based on a member's physical proximity to the subject property. Rather, subsection (4)(ii) permits a nonprofit corporation to file an Act 135 petition *only if* it is located in the City *and* it participated in a remediation or community development project within five miles of the property.[5]

We also reject the Alliance's argument that, as a result of the Trial Court's ruling, "a neighbor is prohibited [from] joining an organization in order to empower a non[]profit entity to remove blight that an individual by herself would otherwise not be capable," which it claims "is in direct conflict with the stated purpose of [Act

---

[5] In its appellate brief, the Alliance argues that the Delaware County Court of Common Pleas recently concluded, under similar facts, that a nonprofit corporation was a party in interest under Act 135 because one of its members resides within 2,000 feet of the property at issue. *See* Pet., Ex. 3. However, this Court is not bound by decisions of the courts of common pleas. *See Burgoon v. Zoning Hearing Bd. of Charlestown Twp.*, 277 A.2d 837, 840-41 (Pa. Cmwlth. 1971).

8

135]." Alliance Br. at 22. As a resident within 2,000 feet of the Property, Ms. Mancini could have petitioned the Trial Court for a conservatorship because she is clearly a party in interest under subsection (3) of the party-in-interest definition.

Moreover, Act 135 specifically allows different persons or entities to serve as the petitioner and the conservator. After a party in interest files an Act 135 petition, Section 5(e) provides a mechanism for the trial court to determine which person or entity to appoint as conservator for the property at issue. 68 P.S. § 1105(e). Under Section 5(e), the trial court must first consider the most senior non-governmental lienholder, and if the most senior non-governmental lienholder is not competent to serve as conservator, or declines the appointment, then "the court may appoint *a nonprofit corporation or other competent entity*" if certain requirements are met. 68 P.S. § 1105(e)(2)-(3) (emphasis added). Thus, as the Trial Court correctly observed, "nothing in [Act 135] prohibit[s] a property owner affected by blight, such as [Ms.] Mancini, from filing a petition for conservatorship and asking [that] . . . the . . . Alliance be named as the conservator." Trial Ct. Op., 7/23/19, at 6 n.2.

For these reasons, we conclude that because it is undisputed that the Alliance does not reside or own a business within 2,000 feet of the Property, it is not a party in interest under subsection (3) of the party-in-interest definition. Therefore, we affirm this portion of the Trial Court's decision.

### 2. Subsection (4) of the Party-in-Interest Definition

The Alliance also argues that the Trial Court erred in concluding that it is not a party in interest under subsection (4) of the party-in-interest definition as a nonprofit corporation. Section 3 of Act 135 defines "nonprofit corporation" as *"[a] nonprofit corporation that has, as one of its purposes, remediation of blight*, community development activities, including economic development, historic

9

preservation or the promotion or enhancement of affordable housing opportunities." 68 P.S. § 1103 (emphasis added). For such an entity to qualify as a party in interest, however, it must also establish, under subsection (4)(ii), that it is "located in [the City] *and . . . participated in a project within a five-mile radius of the location of the subject property*." 68 P.S. § 1103 (emphasis added).

On its face, the statute is unclear as to what manner or level of participation in a previous remediation project is required for a nonprofit corporation in the City to qualify as a party in interest, as it does not define "participated." In its Petition, the Alliance alleged that "through its members, [it] has been actively engaged in blight remediation projects in Philadelphia for over two decades." Pet. ¶¶ 13, 113. The Alliance further alleged that, "through its members, [it] has extensive experience" with "remediation of blighted properties" and "facilitating the financing" of blight remediation projects, including two properties located within five miles of the Property. *Id.* ¶¶ 14-15, 114-15.

The Trial Court found that, even accepting these averments as true, the fact that the Alliance's *members* participated in or helped finance blight remediation projects within five miles of the Property does not establish that *the Alliance* participated in a remediation project within five miles of the Property. The Petition does not describe the Alliance's level of involvement in either of the projects identified, nor does it state whether the individuals referenced were merely "Supporter Members" (such as Ms. Mancini) or whether they had some other level of membership in the Alliance.[6]

---

[6] The documents submitted with the Alliance's Petition show that "Supporter Members" retain their membership in the Alliance only until the Act 135 proceeding in which they participated is resolved. *See* Pet., Ex. 4, ¶ 9 (providing that "[t]he member status of a Supporter Member shall automatically terminate by . . . entry of a final order or final resolution of the Act 135 [a]ction for the [s]ubject [p]roperty").

10

We conclude, however, that these factual issues should have been addressed at an evidentiary hearing. Contrary to the Trial Court's conclusion, it is not clear from the face of the Petition that the Alliance is not a party in interest as a nonprofit corporation. As the Alliance points out in its brief, had the Trial Court conducted a hearing, the Alliance could have presented evidence establishing that it has a direct and immediate interest in the Property by way of its prior involvement in the remediation of nearby blighted properties.

For these reasons, we conclude that the Trial Court erred in determining, without a hearing, that the Alliance is not a party in interest under subsection (4) of the party-in-interest definition as a nonprofit corporation. Therefore, we reverse that portion of the Trial Court's decision and, as discussed more fully below, remand this matter for an evidentiary hearing on the issue of whether the Alliance qualifies as a party in interest as a nonprofit corporation under Section 3 of Act 135.

### 3. Lack of an Evidentiary Hearing

Next, the Alliance asserts that the Trial Court abused its discretion in denying its Petition, based solely on the Trial Court's finding that the Alliance is not a party in interest, without first conducting an evidentiary hearing.

Preliminarily, we must determine whether the Alliance properly preserved this issue for appeal. The Alliance did not challenge the Trial Court's failure to hold a hearing in its Pa. R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal, and the Trial Court did not address this issue in its Pa. R.A.P. 1925(a) Opinion. In its Rule 1925(b) Statement, the Alliance only argued the substantive points addressed above – that it qualifies as a party in interest under subsections (3) and (4) of the party-in-interest definition.

11

In its appellate brief, the Alliance argues, for the first time, that the Trial Court was required to hold a hearing before determining that the Alliance was not a party in interest under Act 135. The Alliance asserts that in the Trial Court's Rule 1925(a) Opinion, which was filed five months after its Order denying the Petition, the Trial Court made "unsubstantiated" factual findings "in the absence of a record hearing" and relied on such findings in ruling on the Petition. Alliance Br. at 23-24. The Alliance essentially claims that it was unaware of the specific bases for the Trial Court's ruling until the filing of its Opinion and that the Trial Court made factual findings beyond the scope of the record in its Opinion. Therefore, because the Alliance raised these issues at its first available opportunity, we decline to find waiver.[7]

Turning to the merits, the Alliance asserts that Section 5(a) of Act 135 required the Trial Court to hold a hearing within 60 days of its filing of the Petition. 68 P.S. § 1105(a). Section 5(a) states: "*The court shall act upon a petition submitted by holding a hearing within 60 days of receipt of the petition* and by rendering a decision no later than 30 days after completion of the hearing." *Id.* (emphasis added). Only after a hearing may the trial court appoint a conservator for the property under Act 135. *In re Conservatorship Proceeding in Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 453 (Pa. Cmwlth. 2010).

In *Germantown Conservancy*, this Court recognized that an Act 135 petitioner has a "substantive right" to a hearing and need not submit supporting evidentiary proofs with its petition. *Id.* at 463. We stated that "a petitioner under Act 135 has

---

[7] In its Rule 1925(b) Statement, the Alliance also "reserve[d] the right to raise any additional issues arising from any subsequent decision or opinion issued by the [T]rial [C]ourt." Reproduced Record (R.R.) at 130a.

*an absolute right to a hearing* if it establishes that the conservatorship is not statutorily barred." *Id.* at 462 (emphasis added). We further explained:

> Under Section 4(b) [of Act 135,] the petitioner is to provide a sworn statement that the factors [for a conservatorship] in Section 5(d)(5) are met. *Under Act 135 this is all that is required to proceed to a hearing. Act 135 does not require proofs be attached or pled and dismissal of the petition results in deprivation of a hearing[,] which is a substantive right.*

*Id.* at 463 (emphasis added). Here, the record shows that the Alliance pled all of the requisite statutory factors for a conservatorship in its Petition, *see* Pet. ¶¶ 48-61, 64-105, and provided a sworn statement that such factors have been met, *see* R.R. at 35a. Therefore, under Section 5(a) of Act 135, the Alliance was entitled to a hearing within 60 days of the filing of its Petition. *See Germantown Conservancy*, 995 A.2d at 462.

The Trial Court determined, as a threshold matter, that the Alliance was not a party in interest authorized to file a petition under Act 135 in the first instance, based on the averments in the Petition and the exhibits attached thereto. However, as explained in Section 2 of this Analysis, *supra*, factual questions exist with regard to whether the Alliance qualifies as a party in interest as a nonprofit corporation – specifically with regard to the nature of the Alliance's participation in two prior remediation projects within five miles of the Property. These factual questions should be resolved at an evidentiary hearing.

Furthermore, the DeSantis Heirs contend in their appellate brief that they had no notice of the filing of the Petition in the Trial Court and only learned of it in the course of the separately filed quiet title action. *See supra* note 2. As the apparent owners of the Property, they should have an opportunity to properly respond to the Petition and to present testimony and evidence before the Trial Court if they so

13

choose. *See* 68 P.S. § 1103 (subsection (1) of the party-in-interest definition states that "[t]he owner" of the subject property is a party in interest under Act 135).[8]

Finally, the Alliance contends that the Trial Court made and relied on unsubstantiated factual findings in ruling on the Petition, as follows:

> For example, the Trial Court – without ever hearing from the Supporter Member [(Ms. Mancini)] or any other member or agent of the Alliance – made sweeping findings about [the Alliance's] motives in filing the Act 135 Petition and utilizing [the] Supporter Member concept when it found the Alliance's actions to be "disingenuous" and "designed to deprive the 'Supporter Member' of financial benefits to which she may be entitled under [Act 135]." Those findings are false. The [T]rial [C]ourt, without any evidence other than its own presuppositions on the Alliance's intent in accepting [Ms.] Mancini as a Supporter Member, made the following particularly egregious ["]finding["]:
>
> > "The Preservation Alliance, through its 'Supporter Member' program, sought to ensure it would be entitled to any fees generated by the conservatorship, regardless of whether the court appointed a conservator or granted conditional relief."
>
> . . . .
>
> The intentions discerned by the Trial Court are not just inaccurate, but[] because there was no hearing, there is no hearing transcript, witness testimony[,] or other record evidence to provide [this C]ourt with a basis for meaningful appellate review.

---

[8] In their appellate brief, the DeSantis Heirs aver:

The Alliance's allegations made in the Petition and again in the instant appeal that the Property is long-abandoned or in need of a conservator for rehabilitation are inaccurate and, after securing title and ownership to the Property [following the most recent quiet title action], the DeSantis [Heirs] will repair and maintain the Property, if necessary, which would meet any ends regarding residency and abandonment of which the Alliance is purportedly concerned.

DeSantis Br. at 3.

14

Alliance Br. at 24-25 (quoting Trial Court Opinion) (internal citations omitted); *see also* Trial Ct. Op., 7/23/19, at 6 (finding that "Supporter Members" are nothing more than "pawns, used by the . . . Alliance in an attempt to gain 'party[-]in[-]interest' status in a single conservatorship action[,] [who are] then discarded when they are no longer useful").

In its appellate brief, the Alliance argues that contrary to the Trial Court's determination, Ms. Mancini reached out to the Alliance voluntarily to make use of the Alliance's extensive resources and to limit her own liability by not filing the Petition herself. Alliance Br. at 24-25. As discussed earlier, Ms. Mancini qualifies as a party in interest under subsection (3) of the party-in-interest definition because she resides directly adjacent to the Property. *See* 68 P.S. § 1103. As such, Ms. Mancini would also be entitled to testify at the Act 135 hearing before the Trial Court. *See* 68 P.S. § 1105(c) ("At the hearing, *any party in interest* shall be permitted to present evidence to support or contest the petition, including, but not limited to, the schedule of encumbrances.").

We agree with the Alliance that, by making factual determinations regarding the Alliance's motives and intentions in filing the Petition in the absence of a hearing, the Trial Court denied the Alliance the opportunity to properly defend its Petition and to establish its party-in-interest status through testimony and other evidence.

## Conclusion

We conclude that the Trial Court correctly determined that the Alliance is not a party in interest under subsection (3) of the party-in-interest definition, because it is undisputed that the Alliance does not reside or operate business within 2,000 feet of the Property. With regard to subsection (4), we conclude that the Trial Court

erred in determining that the Alliance is not a party in interest as a nonprofit corporation without a hearing, because factual issues exist regarding the Alliance's participation in blight remediation projects within five miles of the Property.

Further, we hold that, even if it appears on the face of an Act 135 petition that the petitioner is not a party in interest, the trial court is still required to conduct a hearing within 60 days, as long as the petitioner pleads the requisite factors for a conservatorship under Section 5(d)(5) of Act 135. *See Germantown Conservancy*, 995 A.2d at 462-63. The petitioner's party-in-interest status, if contested, is a matter to be addressed at the Act 135 hearing.

Accordingly, we affirm the Trial Court's Order in part, reverse it in part, and remand this matter to the Trial Court for an evidentiary hearing on the Alliance's Petition. At the remand hearing, the parties shall present evidence on the issue of whether the Alliance qualifies as a party in interest as a nonprofit corporation under subsection (4) of the party-in-interest definition.

_____
ELLEN CEISLER, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth Preservation Alliance, Inc.,

     Appellant

    v.

Thomas DeSantis, Known Heir of John F. DeSantis and Unknown Heirs of John F. DeSantis

:
:
:
:
:
:
:
:
:
:
:

No. 335 C.D. 2019

## **O R D E R**

AND NOW, this 6th day of May, 2020, the Order of the Court of Common Pleas of Philadelphia County (Trial Court), entered February 6, 2019, is hereby AFFIRMED IN PART AND REVERSED IN PART, and this matter is hereby REMANDED to the Trial Court for further proceedings consistent with the foregoing Opinion.

   Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge